# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**HAROLD MOSES COVERT**                                                                    **PLAINTIFF**
**ADC #151511**

**V.**                           **NO. 4:20-cv-01170-BRW-ERE**

**D. PAYNE,** *et al.*                                                                     **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections:**

This Recommendation for dismissal has been sent to United States District Court Judge Billy Roy Wilson. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Wilson may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

**II.    Background:**

Plaintiff Harold Moses Covert, an Arkansas Division of Correction (ADC) inmate, filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 2*. In his complaint, Mr. Covert alleges that Defendants D. Payne, W. Kelley, J. Gibson, B. Carroll, J. Shipman, M. Reed, J. Plummer, S. Taylor, F. Washington, Lt. Brown, Lt.

Mahoney, Lt. M. Lloyd, Lt. M. Demery, Lt. W. Washington, Sgt. T. Mothershed, Sgt. Williams, Sgt. T. Dunlap, Sgt. R. Jones, Sgt. Medders, Cpl. A. Cook, Cpl. Johnson, and Cpl. Glover have been deliberately indifferent to his safety.[1]

Pending before the Court is Defendants' motion for summary judgment. *Doc. 161*. Mr. Covert has responded to Defendants' motion, and Defendants have replied. *Docs. 167, 168, 169, 170, 171, 172*.

For the reasons explained below, the Court should grant Defendants' motion for summary judgment, dismiss Mr. Covert's remaining claims, with prejudice, and close the case.

## III.  Discussion:

### A.  Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material

---

[1] The Court previously dismissed Mr. Covert's claims for money damages against Defendants in their official capacity. *Doc. 60*. In addition, the Court dismissed Mr. Covert's claims against Defendants Bivens, Lewis, and Owen based on Mr. Covert's failure to fully exhaust his administrative remedies. *Doc. 98*.

fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

### B.  Factual Background[2]

At all times relevant to this lawsuit, Mr. Covert was housed at the Varner Supermax Unit in a single-man cell in cellblock 5. He was a participant in the ADC Step-Down Program – a program designed to prepare inmates housed in restrictive housing to enter general population or the community. *Doc. 162-1*. Mr. Covert generally alleges that most inmates assigned to the Step-Down Program are serious offenders who have a "long history of assaultive behavior."[3] *Doc. 2 at 18*. Based on his status as a "confidential informant," Mr. Covert believes that he "is a prisoner that requires maximum protection from others that Plaintiff is not getting here at this

---

[2] The factual background is based on the allegations in Mr. Covert's complaint and declarations, the parties' statement of facts, and supporting exhibits. (*Docs. 2, 162, 163 169, 170-171*). Pursuant to Local Rule 56.1, the Court deems admitted all material facts set forth in Defendants' statement of material facts unless controverted by Mr. Covert's responsive statement of facts.

[3] Mr. Covert testified that inmates in the Step-Down Program are serving convictions for such crimes as aggravated battery, rape, and sexual assault. *Doc. 162-2 at 113*.

facility."[4] *Id. at 11*. He also alleges that he notified Defendants Gibson, Payne, Kelley, Carroll, Shipman, Plummer, Reed, Taylor, Mahoney, Mothershed, Simpson, Washington, Glover, Medders, Dunlap, Lloyd, Bivens, Washington, Demery, and Jones that his continued placement in the Step-Down Program posed a substantial risk of harm to his safety. *Id*.; *Doc. 162-2 at 105-109*. Mr. Covert explains that Defendant Shipman is responsible for assigning inmates to the Step-Down Program, and Defendants Washington, Gibson, Carroll, Brown, Mahoney, and Lloyd are involved in the decision-making process. *Id. at 83-84, 90*. He contends that the "inadequate monitoring by prison officials and the ready availability of weapons and refusal to take even the simplest measure to protect Plaintiff from danger inflicts a constituion[al] harm to Plaintiff." *Doc. 2 at 22*.

In 2020, Mr. Covert began notifying Defendants that he feared for his safety. *Doc. 162-2 at 17*. He allegedly provided "valid information about a planned assault that could serious[ly] injure" him. *Doc. 2 at 11*. More specifically, Mr. Covert's alleged fear of two inmates assigned to the Step-Down Program, an unidentified inmate with "long hair" ("Pig") and S. Jackson, prevented him from leaving his cell. *Id. at 12*. According to Mr. Covert, being housed close to "Pig" poses a substantial

---

[4] Mr. Covert also notes that he was stabbed by another inmate in 2016, while he was housed at the East Arkansas Regional Unit. *Doc. 2 at 10*. He theorizes that he was stabbed because he told prison officials that an ADC officer was smuggling drugs into the ADC. *Id*. No claims related to the 2016 attack are before the Court in this action.

risk to his safety because "Pig" previously stabbed another confidential informant.[5] *Id*.

In February 2020, Mr. Covert filed a grievance complaining that inmate Jackson threatened him by stating "I better not see you out of the cell. I'm going to put your little ass up."[6] *Doc. 162-2 at 79-80*. After filing that grievance, Defendant Carroll allegedly told Mr. Covert that if inmate Jackson was placed on his enemy-alert list, Mr. Covert would be notified. *Id. at 81*. Mr. Covert never received any notification from Defendant Carroll.

Mr. Covert fears for his safety around inmates Pigg and Jackson because of statements he made about a friend of theirs, inmate Rick Smith. Specifically, Mr. Covert told Defendant Carroll that Smith was providing drugs to other inmates. *Id. at 13*. As a result, Smith was transferred. After writing Defendant Carroll to notify him about the situation, Mr. Covert received a response from Defendant Kelley's office advising him that, if he had an issue with another inmate, he should notify staff so that inmate could be placed on his "offender separation list." *Id. at 13*. Mr. Covert contends he attempted to comply with those instructions, but never received

---

[5] Mr. Covert concedes that he has not seen this inmate's institutional file. *Doc. 162-2 at 76*.

[6] In his complaint, Mr. Covert alleges that this event occurred on March 16, 2020. *Doc. 2 at 14*. At that time, he notified Defendant Plummer of the situation and requested that inmate Jackson be placed on his offender- separation list. Defendant Plummer allegedly refused to do so. *Id*. The following week, Mr. Covert allegedly reported this information to Defendant Shipman. *Id*.

a response. Mr. Covert wants to know which inmates have been placed on his enemy alert list and complains that Defendants have failed to provide him that information.[7] *Id. at 17*. As a result, Mr. Covert does not feel safe leaving his cell. *Id.*

Mr. Covert complains repeatedly that Defendants have refused to discipline staff members who continue to smuggle "poison and/or other deadly drugs into this facility." *Id. at 28*. He contends he has provided specific information to Defendants Carroll and Gibson about individuals "smuggling drugs," but they refused to take action. *Id. at 31, 37*; *Doc. 162-2 at 37*. In addition, he believes that Defendants Cook, Johnson, and former Defendant Lewis have been smuggling drugs into the facility and those drugs could be placed in his food. *Doc. 162-2 at 41, 56*. Although he notified Defendants Washington, Reed, Gibson, and Payne about this conduct, they also failed to take any action. *Doc. 2 at 42-43; Doc. 162-2 at 58-59*.

Finally, Mr. Covert alleges that he heard Defendant Johnson tell J. Robinson the inmate in the cell adjacent to Mr. Covert: "I ain't doing nothing for you why you next to him he trying to mess it up for everybody."[8] *Doc. 2 at 36*. The following day, Defendant Washington moved inmate Robinson to another cell. *Doc. 162-2 at 47*.

---

[7] Defendants attach Mr. Covert's offender separation list to their motion for summary judgment. *Doc. 162-6 at 6*. Inmate Jackson is not listed.

[8] In his deposition, Mr. Covert testified that Defendant Johnson told inmate Jacobi Robinson that she wasn't "doing nothing for you while you're next-door to [Mr. Covert]. He's trying to mess it up for everybody, he's snitching on everybody." *Doc. 162-2 at 45*.

6

At no time during the time period relevant to this lawsuit was Mr. Covert physically injured by any ADC inmate or any named Defendant. *Id. at 122*.

### C. Deliberate-Indifference Claim

#### 1. Assignment to the Step-Down Program

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. The Supreme Court has held that the Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of the inmates [and] . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33, (1994) (quotations omitted). In order to establish a constitutional violation based on his assignment to the Step-Down Program, Mr. Covert must show that: (1) this assignment posed a substantial risk of serious harm (objective component); and (2) Defendants knew of but disregarded, or were deliberately indifferent to, Mr. Covert's health or safety (subjective component). *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003); *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). The United States Supreme Court has clarified that "deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief." *Farmer*, 511 U.S. at 845.

It is undisputed that Step-Down Program inmates are housed in single-man cells. *Doc. 162-5 at 1*. When they leave their cells, they are restrained and escorted

by ADC staff. *Id. at 2*. Officers personally observe restrictive housing inmates twice each hour, no more than 40 minutes apart. *Id*. In addition, inmates entering or leaving the restrictive housing unit must be thoroughly searched. *Id*.

Based on the undisputed facts, no reasonable juror could find that Mr. Covert's continued assignment to the Step-Down Program posed a substantial risk of serious harm to his safety. The safety precautions taken to protect Mr. Covert and other inmates in the program reasonably negate any serious risk of harm. As previously stated, those inmates are: (1) housed in single-man cells; (2) restrained and escorted when leaving their cells; (3) closely monitored; and (4) thoroughly searched when entering or leaving. Additionally, Mr. Covert has failed to come forward with any evidence that these safety protocols were not followed.

Furthermore, the classification committee responsible for assigning inmates to the Step-Down Program considered the risks posed to Mr. Covert. First, they determined that "[t]here was no known risk to Mr. Covert" in allowing him to be housed close to "Pig." *Doc. 162-4 at 3*. Second, after Mr. Covert filed the grievance regarding inmate Jackson's alleged threat, ADC officials investigated and "determined that Mr. Covert's complaint [did] not have any basis." *Id. at 4*.

Mr. Covert's unsubstantiated subjective beliefs about his safety are insufficient to create a genuine question of material fact. Accordingly, Defendants Gibson, Payne, Kelley, Carroll, Shipman, Plummer, Reed, Taylor, Mahoney,

8

Mothershed, Simpson, Washington, Glover, Medders, Dunlap, Lloyd, Bivens, Washington, Demery, and Jones are entitled to judgment as a matter of law on this claim.

### 2. Drug Smuggling at the ADC[9]

Mr. Covert's claim that Defendants Payne, Gibson, Reed, and Carroll were deliberately indifferent to his safety by allowing other ADC officers to smuggle drugs into ADC facilities also should not move forward. Mr. Covert fails to offer any evidence that Defendants Cook, Johnson, or former Defendant Lewis actually provided drugs to other inmates. Mr. Covert testified that: (1) he "did not see [Defendant Johnson] actually give drugs to another inmate" (*Doc. 162-2 at 47*); (2) he "assumed" that Defendant Cook provided inmate Perry marijuana (*Id. at 51*); and (3) he saw former Defendant Lewis provide "something" to an inmate located in Cell 503 (*Id. at 56*).  Again, Mr. Covert's unsubstantiated beliefs and bare allegations are insufficient to create a genuine issue of material fact with regard to this claim. "A case founded on speculation or suspicion is insufficient to survive a motion for

---

[9] In their motion, Defendants argue that Mr. Covert raises this claim in another case that is currently pending in this Court, *Covert v. Kelley, et al.*, E.D. Ark. Case No. 4:20cv202-BSM-JTR ("*Covert I*"). Therefore, he should not be allowed to bring this claim in this lawsuit. The Court agrees that Mr. Covert makes the same general allegations regarding the introduction of drugs into the ADC in both cases. However, in this lawsuit, Mr. Covert specifically references the conduct of Defendants Cook, Johnson, and former Defendant Lewis. He does not refer to those individuals in *Covert I*. Accordingly, the Court will address the merits of this claim.

summary judgment." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999) (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

Furthermore, Defendants have presented evidence that ADC officials investigated Mr. Covert's complaints and "no evidence of the alleged drug smuggling was discovered." *Doc. 162-6 at 4*. Defendants explain that any person entering the Varner Supermax "must clear all physical and electronic security checkpoints." *Doc. 162-4 at 4*. "Personal property is placed in container and scanned by the x-ray machine, individuals are scanned by the Advanced Imaging Scanner, and then pet searched. No one is allowed in the building without satisfactory completing each step." *Doc. 162-6 at 5*.

Based on this undisputed evidence, no reasonable juror could find that Mr. Covert's continued incarceration in the ADC poses a substantial risk to his safety, or that Defendants were deliberately indifferent to any threat posed. Accordingly, this claim should be dismissed, with prejudice.

### 3. Defendant Johnson's Conduct

Mr. Covert's claim regarding Defendant Johnson warrants additional discussion.[10] It is well-settled that a guard who labels an inmate a "snitch" violates the duty to protect an inmate from retaliation or attack, regardless of whether the inmate is subsequently attacked. *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir.

---

[10] Mr. Covert did not list this claim as a separate claim in his complaint.

2008). "The focus of 'snitch' cases is the possibility of retaliation by other inmates." *Reeves v. King*, 774 F.3d 430, 433 (8th Cir. 2014) (emphasis added). "[A]n inmate who is considered a snitch is in danger of being assaulted or killed by other inmates." *Irving*, 519 F.3d at 451. To label an inmate a snitch is to "unreasonably subject that inmate to the threat of a substantial risk of serious harm at the hands of his fellow inmates." *Id*. ("After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the inmate population.").

In their motion, Defendants argue that this claim is not part of this lawsuit because Mr. Covert did not raise this claim in grievance VSM-20-1559. *Doc. 162 at 10*. The Court disagrees. In grievance VSM-20-1559, Mr. Covert specifically complained that he overheard Defendant Johnson telling the inmate in the cell next to him "I don't doing nothing for you why you next to him he trying to mess it up for everybody." *Doc. 84 at 19*. The Court previously allowed Mr. Covert to proceed on the claims raised against Defendant Johnson in grievance VSM-20-1559, which was fully exhausted. *Doc. 98*.

However, in both his complaint and his grievance concerning Defendant Johnson's conduct, Mr. Covert alleged that she stated that he was "trying to mess it up for everybody." Notably, he did not allege that Defendant Johnson "labeled" him a "snitch," nor did he use the term "snitch" until he testified at his deposition.

11

In addition, it is undisputed that: (1) Mr. Covert was never physically attacked or injured by another inmate after Defendant Johnson made the alleged statement; (2) at all times, Mr. Covert was physically separated from inmate Robinson; (3) inmate Robinson never threatened Mr. Covert in any way (*Doc. 162-2 at 47*); (4) Defendant Washington quickly moved inmate Robinson after Defendant Johnson allegedly made the comment at issue (*Id.*); (5) Mr. Covert has failed to come forward with any evidence that any other inmate heard Defendant Johnson's comment; and (6) Mr. Covert consistently identified himself as a "confidential informant."

Accordingly, while the Court does not condone Defendant Johnson's behavior, in light of all the evidence presented, no reasonable juror could find that Defendant Johnson's conduct subjected Mr. Covert to a substantial risk of harm. As a result, Defendant Johnson is entitled to judgment as a matter of law on this claim.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 161*) be GRANTED, and Mr. Covert's remaining claims be DISMISSED, with prejudice.

2. The Clerk be directed to close this case.

DATED this 29th day of December, 2021.

_____
UNITED STATES MAGISTRATE JUDGE